MERRITT, Circuit Judge, dissenting.
The plaintiffs satisfy the pleading requirements of Rule 9(b) and 15 U.S.C., the new Private Securities Litigation Act, § 74u-4(b)(1) and (2). In their seventy-four page complaint, plaintiffs allege with sufficient specificity (1) statements the de *625 fendants made during the April — October 1997 class period to the investing public and to financial analysts that the Balanced Budget Act would have no adverse impact on Vencor’s future earnings (2) when they well knew that the Act would have a serious negative effect on earnings.
In cases of securities fraud, plaintiffs need only plead one material misrepresentation or omission in order for this court to sustain the complaint. See In re Fidelity/Micron Secs. Litig., 964 F.Supp. 539, 543 (D.Mass.1997). In reviewing the plaintiffs’ complaint and alleged misrepresentations concerning the Balanced Budget Act, the court errs in its treatment of so called “forward-looking” statements by the defendants. The panel majority found that all of the statements alleged by the plaintiffs relating to the effect of the Act on the earnings and revenues of Vencor made before the legislation was signed into law were entitled to safe harbor protection as “forward-looking” statements. This is an untenable position because it lets the defendants get away with talking out of both sides of them mouths saying “yes” to the investing public and “no” to their own employees.
Plaintiffs plead that defendants knowingly made false and misleading statements as to expected earnings and revenues of Vencor. As evidence of defendants’ knowledge, they allege in their complaint that in June 1997, Ven-cor was aware of the probable negative ramifications that the Balanced Budget Act’s Medicare reforms would have on the company. Specifically, plaintiffs state that in late June 1997, after acquiring Transitional Hospitals Corporation, defendants Michael Barr, executive vice president and chief operating officer, and James Gillenwater, senior vice president of the company, gave a presentation to approximately one hundred Transitional employees. At that meeting, Barr gave Transitional employees notice that they would be laid off in sixty days. Barr went on to tell the employees that there were “tough times coming in the industry because of likely cutbacks in Medicare” and that “they would have been laid off anyway because the proposed Medicare regulations were going to make it difficult for Vencor to make money and stay profitable.” Am. Compl. ¶ 72.
A month later, on July 25, 1997, Vencor filed its second quarter 10-Q with the SEC. Even though defendants had just told employees they were laying off that “tough times” were ahead and that it would be difficult to stay profitable, in their report to the SEC, defendants continued to indicate that Vencor’s business would not be adversely affected by any pending legislation. Amazingly, defendants made these “predictions” even after the Balanced Budget Act had already passed both the House and the Senate a full month earlier and when it was certain the proposals would be implemented. In their second quarter 10-Q, defendants did issue a general warning that Congress was considering various proposals that could reduce expenditures under certain governmental health and welfare programs such as Medicare and Medicaid, but unequivocally stated that it could not predict the impact of this legislation. As plaintiffs allege, defendants went on to selectively warn of proposed Health Care Financing Administration regulations, but made absolutely no specific mention of the passage or impact of the Balanced Budget Act. Plaintiffs assert that Vencor’s 1997 second quarter 10-Q was misleading as to the negative impact caused by the passage of the Balanced Budget Act.
Moreover, even after the Balanced Budget Act had been signed into law on August 5, 1997, plaintiffs allege that defendants continued to issue the same earnings forecasts to the marketplace as they had earlier. On September 25, 1997, seven weeks after the Act was signed into law and six months after Vencor began analyzing the Act’s effect on the company, defendants Bruce Lunsford, chairman of the *626 board, CEO, and president of Vencor, and Earl Reed, executive vice president and CFO, continued to publicly predict rosy earnings estimates of $2.10 and $2.60 per share for 1997 and 1998 respectively. Am. Compl. ¶ 100. It is ludicrous to think that by this time Vencor management had no knowledge of negative implications the Act would have on the future of Medicare and Medicaid reimbursements. I think that plaintiffs’ allegations are sufficient to allow them their day in court.
The law in this area is clear. Rule lob-5, promulgated under Section 10(b), states in relevant part: “It shall be unlawful for any person ... to make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.” 17 C.F.R. § 240.10b-5. Plaintiffs allege that defendants did exactly what Rule 10b-5 forbids. To escape any liability, defendants and the panel majority hold that their statements regarding Vencor’s earnings were “forward-looking” statements and included sufficient cautionary language as to the uncertainty of those projections, thus triggering the safe harbor provision of the Private Securities Litigation Reform Act. 15 U.S.C. § 78u-5(c). This is wrong.
A forward-looking statement is defined, among other things, as a statement including a projection of revenues, income, earnings per share, capital expenditures, dividends, capital structure, or other financial terms. See 15 U.S.C. § 78u-5(i)(l)(A). A company is allowed to make a forward-looking statement without fear of liability if the statement does not hold true when the statement is accompanied by “meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.” 15 U.S.C. § 78u-5(c)(l). This is the so-called safe harbor provision. The statutory safe harbor operates in the alternative in two steps. First, unless a complaint pleads specific facts demonstrating that defendants have actual knowledge of the falsity of the forward looking statement, then there is no liability as a matter of law. See 15 U.S.C. § 78u-5(c)(l)(B). Second, even if actual knowledge of falsity is factually pled, the statutory safe harbors bars liability of the forward looking statement if the statement is accompanied by a cautionary statement about its uncertainty. See 15 U.S.C. § 78u-5(c)(l)(A). With this in mind, I would find that the “cautionary statement” proffered by defendants does not meet the criteria set by the statute. Nowhere in Vencor’s 1997 public disclosures or statements prior to October 22,-1997, does Vencor identify important factors or specifically warn of any negative impact by the proposed Medicare legislation. Defendants simply continued to warn that management could not predict whether such proposals would be adopted or if adopted, what effect, if any, such proposals would have on its business. In point of fact, defendants knew that the Medicare legislation was likely to have a serious adverse effect and should have said so.
Defendants should not be allowed to make exaggerated earnings projections and then abstractly warn of pending legislation in Congress claiming that they say they have no idea how it will affect revenues, while at the same time telling employees whom they are laying off that “tough times” are ahead because of certain pending Medicare legislation.
This would not be the first time that this circuit has held that a defendant could be held liable to investors for failing to disclose certain material information in connection with a stock investment. In Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263 (6th Cir.1998), we held, en banc, in an opinion from which Judge Kennedy dissented, that an attorney could be held hable because he had chosen to speak to investors about material details of their proposed securities investment with the issuer without revealing certain additional *627 facts necessary to make his statement not misleading. See Rubin, 143 F.3d at 267-68. We reasoned that even when a person is not under an independent duty to provide information, a person “assumes a duty to provide complete and non-misleading information with respect to subjects on which he undertakes to speak.” Id. at 268 (citing Ackerman v. Schwartz, 947 F.2d 841, 848 (7th Cir.1991)). Applying Rubin to this case, when defendants chose to speak they have a duty to provide complete and non-misleading information regarding those statements. Defendants failed to do so. Accordingly, I would reverse the judgment of the district court, deny defendants’ motion to dismiss, and remand to the district court for further proceedings.
The narrow, rigid interpretation our Court has given the Private Securities Litigation Reform Act makes it now almost impossible to allege securities fraud successfully. The effect of the Court’s decision seems to be that no statements about the future prospects (“forward-looking” statements) of a company are actionable, no matter how dishonest as long as they are accompanied by “magic words” disclaiming knowledge. It makes no difference that insiders are selling their stock with secret knowledge that the company’s prospects are bad while saying the opposite to the public. It reminds me of the rigidity with which the common law courts came to interpret the old forms of action in the seventeenth century. Our system of equity or code or notice pleading is supposed to have changed all that once and for all, but our Court has returned to it with a vengeance in this case under the Private Securities Litigation Reform Act.